UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GARY L. HAPNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:18CV360-PPS |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Gary L. Hapner has filed a complaint challenging the Social Security Administration's denial of his application for disability insurance benefits and supplemental security income benefits. [DE 1.] Hapner alleged that he was disabled as of January 16, 2015 due to "left hand nerve pain, arthritis, trigger finger, depression, and anxiety." [DE 20 at 3.] After a hearing at which Hapner testified, an administrative law judge issued a written decision finding that Hapner was not disabled. [AR at 19-32.][1] Despite concluding that Hapner has serious impairments (mild degenerative changes in the fingers of the right hand, history of carpal tunnel release, history of thumb laceration, and history of trigger fingers with release surgery), the ALJ concluded that Hapner retains the residual functional capacity to perform a number of "light work" occupations

---

[1] The administrative record [AR] is found in the court record at docket entry 13, and consists of a total of 464 pages. I cite to the pages of this AR according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

subject to a few limitations pertaining to the use of his hands.[2]  [AR at 22, 26, 31.]  The matter was reviewed by the Social Security Administration's Appeals Council, which issued a decision affirming the ALJ's conclusion that Hapner is not entitled to disability benefits.  [AR at 4-8.]  Hapner asks me to reverse the adverse decision and remand his case for further proceedings by the Social Security Administration.

## Discussion

My review of the Commissioner's decision is deferential.  I must affirm it if it is supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citation omitted).  The role of the courts is "extremely limited," and I am "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations."  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  I can't reweigh the evidence or substitute my judgment for that of the ALJ.  *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).  But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence."  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

When considering the evidence, "an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but 'must build a logical bridge from the evidence to his conclusion.'"  *Minnick*, 775 F.3d at 935, quoting

---

[2] The issues raised on appeal do not challenge the ALJ's determination of serious impairments that are all related to Hapner's hands and his history of hand surgeries.

2

*Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005). This means that an ALJ's decision must offer an explanation of the rationale from the evidence to his or her conclusions "sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Hapner raises two issues in this appeal. His first ground for reversal is that the Appeals Council erroneously discounted the opinion of his treating physician, Dr. James Mulry, that Hapner's hands are "too weak to hold things consistently," leaving him "effectively totally disabled now – probably permanently." [DE 20 at 15, quoting AR at 435.] The Appeals Council found that the ALJ had "failed to weigh the treating source opinion from James Mulry, M.D." [AR at 4.] The Council then considered Mulry's opinion, and briefly explained its own reasons for giving the opinion little weight. [*Id.*] The Commissioner is required to give controlling weight to "a treating physician's medical opinion on the nature and severity of an impairment" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019), quoting §404.1427(c)(2).

One of the Appeals Council's reasons for rejecting Dr. Mulry's conclusion that Hapner is totally disabled was that it "addresses an issue reserved to the Commissioner, and such opinions are not given any special significance," citing 20 C.F.R. §§404.1527(d) and 416.927(d). [AR at 6.] According to §404.1527(d), an opinion that a patient is

3

disabled is not actually a medical opinion, but instead an opinion "on issues reserved to the Commissioner." The regulations provide that: "We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled." §404.1527(d)(1). Citing the regulations, the Seventh Circuit has confirmed that a doctor's opinion that a patient is "disabled" is "an ultimate determination reserved to the Commissioner." *Richison v. Astrue*, 462 Fed.Appx. 622, 625 (7th Cir. 2012). The applicable law is clear that to the extent Dr. Mulry opined that Hapner was permanently disabled, that did not constitute a medical opinion to which controlling weight might ever need to be given.

Next the Appeals Council states that "Dr. Mulry's opinion is inconsistent with other medical evidence." [*Id.* at 6.] Specifically, the Appeals Council cited the findings of consultative examiner Dr. R. Gupta, who the Council said "found that the claimant had reduced strength in his left hand, normal grip strength bilaterally, and good fine finger manipulative abilities." [*Id.*] Inconsistency with other medical evidence is a valid consideration in the weight to be given a treating physician's opinions. 20 C.F.R. §§404.1527(c)(4), 416.927(c)(4). ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The Commissioner "may discredit the opinion if it is inconsistent with the record." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019).

Hapner specifically contends that the Appeals Counsel has "mischaracterized the consultative examination" of Dr. Gupta, and argues that the Dynanometer testing results Dr. Gupta reported (19.8 kilograms of force using the right hand, and 16.9 kilograms of force using the left) reflect extremely weak grip strength, not normal grip strength bilaterally. [*Id*. at 16-17.] The problem with Hapner's argument is that even with those Dynanometer results, "[n]ormal grip strength at 5/5 bilaterally" is expressly how *Dr. Gupta* stated his findings [*see* AR at 393], not merely how the Appeals Council characterized them. I agree with the Commissioner that "neither Plaintiff nor the Court has established the requisite medical expertise to interpret test results and to rewrite a medical report." [DE 21 at 6.]

Hapner points to Dr. Mulry's repeated findings that Hapner had restricted range of motion and diminished grip strength. [DE 20 at 16.] But the fact that these findings are at odds with Dr. Gupta's required the Commissioner to credit one doctor's findings over the other's, but not necessarily to choose the one more favorable to Hapner's application for benefits. The Appeals Council adopted the ALJ's findings and conclusions [AR at 4], which included a synopsis of examinations and treatment of Hapner's hands by a number of physicians [AR at 27-29]. Besides Dr. Gupta's findings, this included the reports of four other physicians which did not support the conclusion that the condition and function of Hapner's hands rendered him disabled. Against this medical record, the Appeals Council's decision to give little weight to Dr. Mulry's disability conclusion was supported by substantial evidence.

The Council also cited the relative brevity of the physician-patient relationship, noting that Mulry had been treating Hapner "for less than one year when he opined that the claimant was totally disabled." [*Id*.] The length and extent of a treatment relationship is a factor the governing regulations explicitly provide is relevant to the weight given a treating doctor's opinion. 20 C.F.R. §§404.1527(c)(2)(i), 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Although the Appeals Council apparently felt that 5 visits in less than a year did not entitle Dr. Mulry's opinion to much weight, that treatment relationship was longer than that of other treating physicians whose reports bolstered the ALJ's determination. Even though this consideration does not strongly support the little weight given to Dr. Mulry's opinion, for the reasons earlier explained I find that the Appeals Council's determination is not a basis for reversal or remand. Here the Appeals Council more than minimally articulated acceptable reasons for discounting Mulry's disability opinion, and under the highly deferential, even "lax" standard applicable for court review, I cannot second-guess them. *Elder*, 529 F.3d at 415. *See also Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018).

Hapner's second basis for reversal is his contention that the agency failed to consider whether the bilateral neuropathy in his hands met or medically equaled Listing 11.14, and never subjected the question of medical equivalence to a medical expert. [DE 20 at 18.] The Listings describe and define certain medical conditions that are

presumptively disabling for purposes of Social Security benefits. Listing 11.14 sets out criteria for a presumptive finding of disability based on peripheral neuropathy. On the facts of this case, meeting the Listing would require a finding that Hapner has "extreme limitation" in the ability to use both hands. Listing 11.14(A). More specifically, 11.00(D)(2)(c) of the Listings defines "extreme limitation" as "a loss of function of both upper extremities (including fingers, wrists, hands, and shoulders) that very seriously limits your ability to independently initiate, sustain, and complete work-related activities involving fine and gross motor movements."

Hapner's argument is an entirely procedural one, rather than substantive, that is, he does not offer argument and cite evidence in support of a conclusion that he was actually diagnosed with conditions that met or medically equaled Listing 11.14. The Commissioner rightly points out that Hapner bore the burden to show that his impairments met or medically equaled all of the criteria of a Listing. *See*, *e.g.*, *McHenry v. Berryhill*, 911 F.3d 866, 872 (7th Cir. 2018). But an ALJ's failure to "mention the specific listings he is considering" if combined with a cursory analysis may require a remand. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

It is true that the ALJ's Listing analysis made no reference to 11.14. Instead, the very brief treatment at step three of the analysis considered only Listing 1.02 for major dysfunction of a joint due to any cause. [AR at 26.] The ALJ dismissed the idea that the impairments of Hapner's hands met or equaled that Listing because "the evidence fails to establish that the claimant is unable to perform fine and gross movements

effectively." [*Id.*] It seems obvious to me that the same conclusion defeats presumptive disability based on Listing 11.14 as well, since (as I've just explained) that requires a seriously limited ability to engage in activities involving fine and gross motor movements.

The finding that the evidence didn't establish Hapner's inability to effectively perform fine and gross movements is, as Hapner's brief points out, a rejection of Dr. Mulry's opinion that Hapner's hands were too weak to hold things consistently. [DE 20 at 20; AR at 435.] Contrary to Hapner's argument that the ALJ made his conclusion without the support of any other medical expert [DE 20 at 21], the ALJ's opinion lays out other medical evidence in the record suggesting that Hapner's use of his hands was not so impacted as Dr. Mulry opined. This review of the medical record is laid out in the decision's section explaining the RFC determination, immediately following the ALJ's conclusion as to the Listings.

The ALJ cites Hapner's medical release to regular duties in January 2014 after carpal tunnel release and neurolysis procedures in December 2013. [AR at 27.] The decision also recounts Hapner's treatment records in April and May 2014 with Dr. Saltzman noting that Hapner was "looking for a disability rating" but reported that "pain was intermittent, and he denied radiation, swelling, and weakness" in his hands. [*Id.*] Dr. Saltzman prescribed anti-inflammatory and pain medications but concluded that "no further orthopedic treatment was necessary." [*Id.*] Another doctor, Dr. L. Williams, examined Hapner based on his reported hand pain and found "no signs of

8

erythema or infection, and neurovascular examination was normal." [AR at 28.] Dr. Williams performed trigger finger release surgery on three fingers of Hapner's right hand in May 2015, and afterward noted that Hapner's continuing complaints of pain seemed "out of proportion to his subjective complaints." [*Id.*, quoting AR at 421.] The ALJ further noted that although Dr. Williams ordered an EMG to investigate any "component of neuropathy [or] carpal tunnel syndrome," no results of that testing were offered into evidence and the doctor told Hapner that "if the nerve test is normal we may not be able to help him." [*Id.*]

Finally, the ALJ reviewed the reports of two consultative examiners, Drs. Gupta and Yang. The ALJ summarized Dr. Gupta's findings: "Examination of the hands showed normal grip, and fine finger skills were good, including buttoning and zipping, and of note, while the claimant reported 'some stiffness' in his fingers, he confirmed that fine finger manipulative abilities remained good." [AR at 28-29.] Dr. Yang reported that gross motor movements were intact but that Hapner had a slightly decreased range of motion in some finger joints and slightly decreased grip strength, but was able to use a zipper, to button, and to pick up coins, noting greater difficulty with the right hand. [AR at 29.]

Despite Dr. Mulry's findings of some decreased grip and sensation, the rest of the medical record militated in favor of the ALJ's conclusion that Hapner retained the ability to perform fine and gross movements sufficiently effectively so as not to meet any Listing, but at the same time supported the ALJ's decision to include certain hand-

9

related limitations in the RFC. In light of the medical evidence viewed in its entirety, the ALJ's failure to refer to Listing 11.14 at step three is not a ground for remand in this case. *Knox v. Astrue*, 327 Fed.Appx. 652, 655 (7th Cir. 2009).

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Gary L. Hapner's application for Social Security Disability benefits is AFFIRMED.

The Clerk shall enter judgment in favor of defendant Commissioner and against plaintiff.

**SO ORDERED**.

ENTERED: September 12, 2019.

                                          /s/ Philip P. Simon
                                        **PHILIP P. SIMON, JUDGE**
                                        **UNITED STATES DISTRICT COURT**